UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| Z. G., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00584-MPB-MKK |
| | ) | |
| SAMUEL OLSON, | ) | |
| BRISON SWEARINGEN, | ) | |
| BRANDON CROWLEY, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER GRANTING PETITION FOR HABEAS CORPUS AND DIRECTING FURTHER PROCEEDINGS

Petitioner Z.G. ("Petitioner") is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1. Petitioner argues that ICE is unlawfully detaining him under a statute making him ineligible for bond. Respondents argue that Petitioner's detention is lawful and reasonable. Dkt. 14.

The Court finds that Petitioner's continued detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court grants the petition to the extent that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Petitioner an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) before an Immigration Judge ("IJ"); or (2) release Petitioner from custody, under reasonable conditions of supervision.

1

## I.    Background

Petitioner is a citizen of Afghanistan who supported the U.S. armed forces during its war with Afghanistan. Dkt. 1 ¶ 20. When the U.S. withdrew its armed forces, Petitioner fled Afghanistan due to threats from the Taliban and ISIS. *Id.* On September 1, 2021, Petitioner entered the United States at Houston International Airport in order to seek asylum. *Id.*, ¶ 21; dkt. 14-1 at 2 (Notice to Appear). That same day, U.S. Customs and Border Patrol ("CBP") inspected and paroled Petitioner into the country under Operation Allies Refuge and, upon finding that he did not pose a flight or safety risk, authorized Petitioner to remain in the United States until August 30, 2023. *Id.*, ¶ 22; dkt. 1-3 (I-94 form). Petitioner's parole was later extended to August 31, 2025. Dkt. 1-5 (Form I-797C).

While on parole, Petitioner applied for special immigrant status pursuant to Section 602(b) of the Afghan Allies Protection Act of 2009 and received conditional approval as well as work authorization. *Id.*, ¶ 23; dkt. 1-6. The conditional approval stated that "[t]he petition indicates that the person the petition is for is in the United States and will apply for adjustment of status." Dkt. 1-6. Petitioner also has a pending asylum application. Dkt. 1 ¶ 23. On July 15, 2025, USCIS issued a Notice of Intent to Deny Petitioner's application for permanent residency, asserting inadmissibility under Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i). *Id.*, ¶ 26.

A few days after Petitioner's parole expired on August 31, he was arrested pursuant to a Form 1-200 Warrant of Arrest for interior enforcement issued "pursuant to sections 236 [i.e., 8 U.S.C. § 1226] and 287 of the [INA]." *Id.*, ¶ 28. On September 4, Petitioner was also given a Notice to Appear, alleging that his parole expired on August 31, 2025. Dkt. 14-1 at 2. The Notice charges Petitioner with inadmissibility under § 212(a)(7)(A)(i) of the INA (8 U.S.C. § 1182(a)(7)(A)(i)) as "an immigrant who, at the time of application for admission, is not in

possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act. . ." *Id.*, at 5. The "arriving alien" checkbox is marked. *Id.* at 2. That same day, USCIS denied Petitioner's application for adjustment of status because Petitioner had not established his admissibility. *Id.*, ¶ 29; dkt. 14-2 at 2.

On November 3, Petitioner attended a Master Calendar Hearing where the IJ denied his request for a bond hearing because, according to the recent Bureau of Immigration Appeals ("BIA") decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), IJs lack jurisdiction to consider bond for "arriving aliens." Dkt. 1 ¶ 35.

Petitioner filed this habeas petition on November 19. Dkt. 1. The Court ordered Respondents to show cause why the relief should not be granted the following day. After reviewing the parties' submissions, the Court ordered supplemental briefing on Petitioner's statutory and due process arguments. The parties have supplemented their briefs and the Court now turns to the petition.

Petitioner claims that his current detention violates substantive due process, procedural due process, and the INA. Dkt. 1 ¶¶ 71–79. Respondents argue that Petitioner's claim is premature, that he is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A), and that his continued detention is reasonable. Dkt. 14. As will be explained below, the Court finds that the petition is not premature, that Petitioner's detention is governed by § 1226(a), and that his detention is unlawful because he has not been afforded an individualized bond hearing. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

## II.    Exhaustion

Respondents argue that Petitioner's claims are premature because he has not appealed the IJ's decision to not grant a bond hearing to the BIA. Dkt. 14 at 3. Petitioner argues that any attempt

to exhaust his administrative remedies would be futile because the BIA has already directly addressed the issue of his statutory qualification for bond in *Matter of Yajure Hurtado* and *Matter of Q. Li*. Dkt. 17 at 6–7.

Respondents do not cite a statute requiring Petitioner to appeal the IJ's decision before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In this case, requiring Petitioner to exhaust his administrative remedies would be futile. As another trial court in the Seventh Circuit has noted, "[Respondents'] argument is Kafkaesque. Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) (internal quotes and citations omitted). The Court agrees with this reasoning and finds that exhaustion of Petitioner's administrative remedies, such as they are, would be futile and, therefore, not required.

### III.    Statutory Basis for Detention

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while his removal proceedings remain pending. 8 U.S.C. § 1226 and § 1225 govern the detention and removal of aliens.[1] In general, § 1226 applies to aliens "already present in the United

---

[1] The INA uses the term "alien" to refer to noncitizens. The Court adopts this language to minimize confusion when citing the statute.

States," while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S.  281, 303 (2018).

### A.  Detention Pursuant to § 1226

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the alien. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

### B.  Mandatory Detention Pursuant to § 1225

In contrast, § 1225 governs "inspection by immigration officers." Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain aliens removed without further hearing or review unless the alien indicates an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A)(i). This applies to aliens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part,§ 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)."

Unless the alien receives temporary parole under § 1182(d)(5)(A), "'there are no other circumstances under which aliens detained under [§] 1225(b) may be released.'" *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *11 (E.D.N.Y. Nov. 28, 2025) (quoting *Jennings*, 583 U.S. at 300). Accordingly, "[b]oth provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances." *Id.*

### C.  Parole Under § 1182(d)(5)(A)

As seen above, an inadmissible alien who is subject to mandatory detention can be released on humanitarian parole under § 1182(d)(5)(A). This section provides that the Attorney General may "in his discretion parole into the United States temporarily under such conditions as he may

prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Parole is "not [to] be regarded as an admission of the alien[.]" *Id.* "[W]hen the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

According to 8 C.F.R. § 212.5(e)(1)(ii), humanitarian parole is automatically terminated "at the expiration of the time for which parole was authorized." At this point, the alien "shall be restored to the status that he or she had at the time of parole." §§ 212.5(e)(2)(i). Moreover, "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless . . .  the public interest requires that the alien be continued in custody." *Id.*

## IV.    Analysis

Respondents do not argue that Petitioner is detained pursuant to any subsection of § 1225(b)(1). Instead, Respondents claim that Petitioner is subject to § 1225(b)(2)(A) because his parole expired, returning him to the status of "arriving alien." Dkt. 14 at 6. As Petitioner clarifies in his supplemental briefing, however, Respondents' argument is premised on a faulty interpretation of both § 1225(b)(2)(A) and § 1182(d)(5)(A).

### A.  8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i) Do Not Mandate Return to Physical Custody or Mandatory Detention

Respondents rely on two key provisions to support their argument that the expiration of Petitioner's parole subjects him to detention under § 1225(b)(2)(A). First, as seen above, after

parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). At no point, however, do Respondents explain how this provision mandates Petitioner's current detention without bond in Clark County Jail. There is no evidence in the record that Petitioner was detained when he arrived in Texas in 2021. In fact, the record shows that he was granted parole the same day he arrived. *See* dkt. 1-9 (Notice to Appear indicating arrival and parole on September 1, 2021). Furthermore, "custody," and "detention" are two different concepts. Interpreting § 1182(d)(5)(A), the court in *Qasemi v. Francis* explained:

> The law and the statute draw a distinction between "detention" and "custody." "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." Black's Law Dictionary 390 (7th ed. 1999). That contrasts with "detention" or "detain," which Congress uses frequently. When "custody" is intended to denote detention, it is preceded by the modifier "physical," or "in." For example, as the Supreme Court has held, an incarcerated person placed on parole is in the "custody" of the parole board, even if he is not subject to its "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). "Custody" used alone refers to "restraints on a man's liberty, restraints not shared by the public generally." *Id.*

2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Though *Qasemi* is not binding on this Court, its careful analysis of the key terms is persuasive. By "returning" to custody, Petitioner must relinquish the freedoms that he had under parole (i.e., lawful status, work authorization, public benefits, etc.). It does not mean that he must be detained without bond. Indeed, § 1182(d)(5)(A) does not "affirmatively authoriz[e] detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).

In other words, after his parole expired, the INA put Petitioner back into the same position that he was in before he was granted parole. Nevertheless, "[t]he statute does not require the Court to pretend that [Petitioner] was never paroled and permitted to live freely in this country." *Qasemi*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Respondents do not cite any language or principle that returns Petitioner to his physical position at the port of entry in Texas in 2021. "A

noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.*

This interpretation of "custody" is supported by the rest of the sentence, which provides that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). In other words, § 1182(d)(5)(A) suggests that after parole expires, the alien will be treated like any other unadmitted alien under the INA. *See Clark*, 543 U.S. at 386 (interpreting 1182(d)(5)(A) to subject the alien, who was subject to a final order of removal, to "[t]he manner in which the case of any other applicant would be 'dealt with' beyond the 90–day removal period is prescribed by § 1231(a)(6), which we interpreted in *Zadvydas* and have interpreted above.").

Respondents' reliance on 8 C.F.R. §§ 212.5(e)(2)(i) does not alter this analysis. This regulation provides that upon expiration of humanitarian parole under Section 1182(d)(5)(A), the alien "shall be restored to the *status* that he or she had at the time of parole" and that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240." 8 C.F.R. § 212.5(e)(1)–(2) (emphasis added). Once again, the first part of the sentence reiterates that return to "custody" does not necessarily entail mandatory detention. It entails a stripping of one's lawful status as a parolee. The second part of the sentence "appears to provide for either inspection under section 235 (which can then lead to either expedited or regular removal proceedings) or, if the parolee does not require any 'further inspection,' to section 240 proceedings." *Coalition For Humane Immigrant Rights v. Noem et al*., 2025 WL 2192986, at *26 (D.D.C. Aug. 1, 2025). Once again, Respondents highlight the first part of the provision—the restoration of "status"—while ignoring that the rest of the provision provides that parolees will be

dealt with either under Section 235 [8 U.S.C. § 1225] or Section 240 [8 U.S.C. § 1299a], or what are otherwise known as "full removal proceedings." Indeed, Petitioner's Notice to Appear explicitly places him in full removal proceedings under "Section 240" of the INA. *See* dkt. 14-1.

Neither provision requires Respondents to detain Petitioner. Furthermore, instead of returning Petitioner back to his position as an "arriving alien" at the airport in Texas, the provisions strip Petitioner of his parolee status and mandate that he be treated like any other "applicant for admission." Thus, the next question concerns whether Petitioner's detention is authorized by § 1225(b)(2)(A) or § 1226(a).

## B. Section 1225(b)(2)(A) Does Not Apply to Petitioner

Respondents do not explain why the plain text of § 1225(b)(2)(A) applies to Petitioner. Respondents claim that Petitioner resorted to his "arriving" status when his parole expired, but they do not connect this to the specific text of the subsection or to the statutory scheme.[2] As seen above, § 1225(b)(2)(A) has three criteria. An alien "shall be detained," who is "an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Though Respondents do not make this argument, the face of the statute allows the Court to infer that Petitioner fits the description of an "applicant for admission." As seen above, § 1225(a)(1) defines as applicant for admission as any unadmitted alien, which tracks with §1101's definition of "application for admission" as referring to "application for admission into the United States," and not application for a specific visa. Also, because Petitioner has been served with a

---

[2] If anything, looking at the text of each subsection, the explicit designation of "arriving" would appear to funnel Petitioner's detention into § 1225(b)(1), which governs "inspection of aliens *arriving* in the United States . . ." *See Rodriguez-Acurio*, 2025 WL 3314420, at *12–22 for a thorough explanation as to why § 1225(b)(1) would still not logically apply to someone detained within the interior of the United States after residing therein for a few years.

Notice to Appear, it is evident that he is not "clearly and beyond a doubt entitled to be admitted." Nevertheless, Respondents do not explain how Petitioner fits the third criterion of "seeking admission" into the United States. This is a fatal flaw in their argument because "seeking admission" cannot be read as synonymous with "applicant for admission" without violating the rule against surplusage. *See United States ex rel. Polansky v. Exec. Health Res., Inc*., 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec*., 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)); *see also id.* (disagreeing with the construction of § 1225(b)(2)(A) that interprets "applicant for admission" as synonymous with "seeking admission" because, in addition to violating the rule against surplusage, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so.").

Petitioner's supplemental brief explains that the Department of Homeland Security's implementing regulations generally treat "arriving alien" and "seeking admission" as interchangeable. Dkt. 20 at 5. *See, e.g., Tumba v. Francis*, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025). Thus, if Petitioner is an "arriving alien," as Respondents contend, then he is also "seeking admission." Even still, as seen above, § 1182(d)(5)(A) and its regulations removed Petitioner's legal status after his humanitarian parole expired, they did not necessarily return him to the theoretical position of an "arriving alien" at a port of entry. Therefore, "Petitioner shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

11

8 U.S.C. § 1182(d)(5)(A). Moreover, within the context of § 1225(b)(2)(A), Petitioner cannot be said to be "arriving" or "seeking admission" after having been inspected at the border in 2021, paroled, and then residing within the United States for four years.

"Arriving" and "seeking admission" are not defined within the statute. Therefore, the Court turns to the plain meaning of the terms. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). Addressing the same statutory provisions, the court in *Coalition for Humane Immigrant Rights v. Noem* explained that "'[a]rrive' means 'to reach a destination' or 'to make an appearance.'" 2025 WL 2192986 at *28 (quoting *Arrive*, Merriam Webster's Collegiate Dictionary (1996)). The gerund tense "arri*ving*" connotes process or actively working towards reaching a destination. Thus, an alien "arriving" in the United States is in the "process of reaching his or her destination (the United States) and making an appearance here." *Id.* It does not make common sense to interpret "arriving alien" as referring to Petitioner, "who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time." *Id.*; *see Rodriguez-Acurio*, 2025 WL 3314420, at *20 ("The words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival.") (internal citation omitted).

The only evidence in the record that Petitioner is properly classified as an "arriving alien" is the Notice to Appear that checks the "arriving alien" box. *See* dkt. 14-1. Even still, as Petitioner pointed out in his initial petition, this designation must be weighed against the fact that he was arrested pursuant to a warrant that explicitly invokes § 1226. *See* dkt. 1-2. The text of § 1226 authorizes the arrest and detention of aliens with a warrant–§ 1225 does not contain any language

about warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). Furthermore, taking the Notice to Appear at face value, Petitioner would have to be arrested pursuant to § 1225(b)(1)(A)(i) because he is charged with inadmissibility under § 1182(a)(7)(i)(I). *See* § 1225(b)(1) ("If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order . . ."). However, as mentioned above, Respondents do not make this argument, and the record does not show that Petitioner is currently in expedited removal proceedings.

Petitioner is not "seeking admission" into the United States. Similar to "arriving," "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As other courts have explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking admission."). Petitioner is plainly not "seeking admission." He has already been inspected at a port

of entry and granted parole, which has now expired. Aliens such as Petitioner are "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). The fact that Petitioner does not fit into the third criterion, "seeking admission," or its correlate "arriving alien," supports the conclusion that § 1225(b)(2) does not apply to him.

In addition, Respondents' application of 1225(b)(2) to Petitioner does not make sense within § 1225 as a whole. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and it repeatedly refers to "inspection" throughout. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S.-Canada border or a port of entry, such as an airport. *See* 8 C.F.R. § 235.1(f) *et seq* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border port-of-entry" throughout). However, as another district court faced with a similar habeas petition pointed out, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025). Thus, § 1225(b) applies to "individuals who are seeking entry into the United States, not people living here." *Id.*

Faced with similar facts, courts around the country have similarly found that people whose humanitarian parole has expired are not lawfully detained under § 1225(b)(2). *See Qasemi*, 2025 WL 3654098, at *1; *Walizada*, 2025 WL 3551972, at *1; *Rodriguez-Acurio*, 2025 WL 3314420, at *1; *Mohammadi v. Larose*, 2025 WL 3731737, at *4 (S.D. Cal. Dec. 26, 2025). This Court finds the reasoning in these cases persuasive and finds that § 1225(b)(2) does not apply to Petitioner.

### C. Petitioner is Detained Under § 1226(a)

As seen above, § 1226 pertains to the "[a]pprehension and detention of aliens," and it authorizes the Attorney General to issue a warrant to arrest and detain an alien during removal proceedings. Federal regulations provide that aliens detained under § 1226(a) receive bond hearings. *See* 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). The plain language suggests that § 1226—not § 1225—plainly applies to Petitioner because he is an "alien," who was "apprehended" and "detained."

Respondents argue in the alternative that Petitioner is lawfully detained under § 1226 because he had an opportunity to receive a bond hearing before an IJ. Dkt. 14 at 8.  Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Petitioner had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1).  The IJ did not "revoke" or "deny" bond; she decided that she did not have jurisdiction to do either of those actions. Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents'

case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Petitioner is not challenging a discretionary judgment—he is the IJ's assertion that it does not have discretion.

In sum, Petitioner's detention without opportunity to request a bond hearing from an IJ who will individually determine his eligibility for bond pursuant to § 1226(a) violates the INA. Petitioner is thus entitled to habeas relief because his continued detention violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## V.    Scope of Relief

Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing under § 1226(a). Dkt. 1 at 12. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Whether viewed through the scope of § 1226 or the Fifth Amendment, the appropriate relief for Petitioner is a bond hearing—not immediate release. He maintains—and the Court agrees—that he is subject to § 1226, which allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Petitioner's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful because the government refuses to consider whether he may be released as the law requires.

## VI.    Conclusion

For the above reasons, the Court **grants** the petition for writ of habeas corpus. Respondents' detention of Petitioner without an individualized bond hearing violates the "laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing pursuant to § 1226(a) and its corresponding regulations; or (2) release Petitioner from custody, under reasonable conditions of supervision.

Respondents must file documentation that they have provided Petitioner with a bond hearing, including apprising the Court of the results of the hearing. If Respondents release Petitioner, then they must file documentation of his release. Respondents **must file notice with the court within four days** of either action. Z.G.'s unopposed motion to proceed under a pseudonym, dkt. [3], is **granted** [3]

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: January 9, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-Registered Counsel of Record

---

[3] Federal courts maintain a "strong presumption that adult litigants must use their own names." *Doe v. K.J.*, 2025 WL 2755815, at *1 (7th Cir. Sept. 29, 2025). However, the Seventh Circuit has permitted litigants to proceed pseudonymously to limit exposure to retaliatory violence and "to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); *see also P.A.-V. v. Bondi*, 148 F.4th 511, 515 (7th Cir. 2025) (granting motion to proceed under pseudonym "out of an abundance of caution" because movant's "fear of retaliatory acts of violence . . . renders anonymous litigation prudent" and "the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name"); *E.F.L. v. Prim*, 986 F.3d 959, 961 (7th Cir. 2021) ("Because of E.F.L.'s allegations of domestic abuse and her fear of retaliation, this court granted her motion to use a pseudonym while pursuing this appeal."). Z.G.'s unopposed representations that he faces persecution due to his political activity and journalism justify application of the exception in this case.